*MISSOURI COURT OF APPEALS*
*WESTERN DISTRICT*



| | | |
|---|---|---|
| **BRIAN S. WETZEL,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD86869** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | **November 5, 2024** |
| **ROOT INSURANCE COMPANY,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Ray County, Missouri**
**Honorable Kevin L. Walden, Judge**

**Before Division One: Lisa White Hardwick, Presiding Judge,**
**Cynthia L. Martin, Judge, and Janet Sutton, Judge**

Root Insurance Company (Root) appeals the judgment entered by the Ray County Circuit Court (circuit court) denying its motion to set aside a default judgment entered in favor of Brian Wetzel (Wetzel) on Wetzel's petition for breach of contract and vexatious refusal to pay. Root argues that the circuit court abused its discretion in denying its motion to set aside the default judgment because Root demonstrated that it had both good cause and a meritorious defense. We affirm.

## Factual and Procedural Background

In 2018, Root, an Ohio insurance company, was admitted as a property and casualty insurer in Missouri, and Root was regulated by the Missouri Department of

Insurance. (The Department). On March 11, 2022, the Missouri Secretary of State notified Root that it needed to select a registered agent by April 20, 2022, as the Department would no longer be listed as Root's registered agent.[1] At some point, Root informed the Department that if it received service of process for Root, the Department should forward that service to its registered agent, CT Corporation.[2] On June 10, 2022, the Department sent a letter to the Missouri Secretary of State acknowledging that CT Corporation was Root's agent for service of process. Root did not list a different registered agent on its annual report filed with the Missouri Secretary of State on June 27, 2022.

On October 14, 2022, Wetzel filed a petition alleging claims of breach of contract and vexatious refusal to pay against Root. Wetzel alleged that on March 14, 2022, because of a wet roadway, he lost control of his vehicle and flipped it several times, totaling it. At the time of the accident, Wetzel's vehicle was insured under a policy issued by Root. The policy included collision coverage requiring Root to pay the cash value for collision damage to Wetzel's vehicle.

Wetzel alleged that on March 18, 2022, he submitted a claim to Root and it subsequently denied the claim. Wetzel alleged that Root's refusal of his claim and its failure to settle it in a timely manner constituted a vexatious refusal to settle in violation

---

[1] The parties offer no explanation as to what prompted this letter and have not included any documentation that explains it.

[2] We have no documents in our legal file establishing this fact beyond Root's attorney's statements to the circuit court and in its brief filed with our Court. Additionally. Root conceded at oral argument before this Court that CT Corporation was its registered agent.

of section 375.420.[3]  Wetzel requested damages including $15,000 for the value of his vehicle, as well as additional damages incurred for alternative transportation, and statutory damages for vexatious refusal to pay, interest, and attorney's fees.

On October 18, 2022, the circuit court issued a summons to Root at its Columbus, Ohio, address.  Wetzel served the Department with the summons and petition on October 31, 2022.  The same day, the Department forwarded those documents by certified mail to CT Corporation.  On November 2, 2022, CT Corporation acknowledged receipt of the certified mail.

By November 2, 2022, both the Department as well as CT Corporation had been served with Wetzel's petition and summons.  On November 10, 2022, the Department filed with the circuit court the notice of original process to Root in care of CT Corporation.

Root failed to timely file any response to Wetzel's petition and summons.  On December 14, 2022, Wetzel filed a motion for default judgment.  The motion for default judgment alleged that on November 2, 2022, Root was served with a copy of the petition and summons by service on CT Corporation, Root's registered agent, and that Root failed to file a timely answer and was, therefore, in default.

On January 5, 2023, the circuit court heard Wetzel's motion for default judgment. The circuit court entered judgment in Wetzel's favor, finding that Root appointed CT Corporation as its agent for receiving service, that the petition was served on CT

---

[3]  Revised Statutes of Missouri (2016).

Corporation on October 31, 2022, and that Root failed to answer the petition. The default judgment awarded Wetzel damages for the value of his vehicle, amounts incurred for replacement transportation, statutory damages for vexatious refusal, costs, and attorney's fees for a total of $42,150 plus statutory interest.

On March 7, 2023, Root filed a motion to set aside the default judgment pursuant to Rule 74.05(d).[4] Root's motion asserted that it had good cause for setting aside the default judgment, it had a meritorious defense to Wetzel's petition, and that Root timely filed the motion to set aside.

An affidavit of a claims director for Root was attached as an exhibit to Root's motion to set aside in support of its claim that it had a meritorious defense to Wetzel's petition. The claims director averred that Wetzel advised Root of the accident and that Wetzel provided the following details: (1) Wetzel stated that the accident occurred while he was on his way to pick up freight as part of his employment as a contractor, and (2) Wetzel informed Root that the primary purpose of the vehicle involved in the accident was to haul freight/cargo. The claims director stated that Root informed Wetzel that it was denying coverage on Wetzel's claim under a policy exclusion that barred "coverage for retail or wholesale delivery, including but not limited to, the pickup, transport, or delivery of magazines, newspapers, mail or food." Neither the insurance policy nor the specific exclusion provision was attached to the exhibit or the motion to set aside.

---

[4] Rule references are to the Missouri Supreme Court Rules (2023).

4

In support of its argument that it had good cause to set aside the default judgment, Root stated in its motion that CT Corporation did not provide Root with a copy of the summons or petition until *after* the circuit court entered the default judgment. Root stated that it was unaware of the pending lawsuit until the circuit court mailed Root a copy of the default judgment on January 6, 2023. Root asserted there was good cause to set aside the default judgment because any mistake or conduct was not intentionally or recklessly designed to impede the judicial process. On the issue of good cause, Root did not attach any supporting affidavits to its motion.

On June 1, 2023, the circuit court heard Root's motion to set aside the default judgment. Root conceded that it was properly served through the Department, but stated the issue was that CT Corporation did not provide Root a copy of the petition until after the circuit court entered the default judgment. At the hearing, in support of its claim that it had good cause, Root submitted an affidavit of Root's deputy general counsel. The affidavit stated, in its entirety:

> I, the undersigned, swear that the matters herein stated are true to the best of my knowledge and belief:
>
> 1. Defendant Root Insurance Company never received, nor was advised of, the alleged service upon CT Corporation System or the pending lawsuit by anyone prior to the entry of Default Judgment.
>
> 2. Defendant Root Insurance Company was never advised, nor notified, of Plaintiff's pending Motion for Default Judgment, or scheduled hearing on the same, by anyone.
>
> 3. Defendant Root Insurance Company first became aware of the pending lawsuit when it received a copy of the Default Judgment, which was mailed to Defendant by the Court on January 6, 2023.

4. Defendant Root Insurance Company was not provided with a copy of the Summons or Petition by CT Corporation System until after the Court entered the Default Judgment.

Further, Affiant sayeth not.

At the hearing, Root argued that CT Corporation had always provided notice in the past on other lawsuits and there was a "dispute" between Root and CT Corporation as to why it had not provided notice in this case to Root. Root informed the circuit court that CT Corporation disputed whether it owed an "obligation," or whether there was a contractual basis for CT Corporation to provide notice to Root. Root argued that this constituted a mistake sufficient to provide good cause to set aside the default judgment.

Wetzel argued that Root did not show good cause to set aside the default judgment. Wetzel argued that he should not be punished for a "problem" between Root and CT Corporation. Wetzel also pointed out to the circuit court that he did not "know what the facts [were] between CT Corporation and Root" and that there was "no affidavit as to what this mistake was." Wetzel argued that Root's actions went beyond a mere mistake and instead constituted reckless disregard.

The circuit court took the matter under advisement and approximately six months later, on November 29, 2023, entered its judgment denying Root's motion to set aside the default judgment. (Rule 74.05(d) judgment). The circuit court found that Root did not show good cause why the default judgment should be set aside and that Root did not present facts constituting a meritorious defense.

Root appeals.

6

## Standard of Review

We review the circuit court's denial of a Rule 74.05(d) motion to set aside a default judgment for an abuse of discretion. *Solomon v. St. Louis Circuit Att'y*, 640 S.W.3d 462, 477 (Mo. App. E.D. 2022); *Vogel v. Schoenberg*, 620 S.W.3d 106, 111 (Mo. App. W.D. 2021). A circuit court abuses its discretion when the "ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful consideration." *Vogel*, 620 S.W.3d at 111 (citation omitted). We view the evidence in the light most favorable to the ruling when we review a circuit court's determination of good cause under Rule 74.05(d). *T Westfall Plaza WCR MO, LLC v. SJB Restaurant Grp., LLC*, 689 S.W.3d 216, 219 (Mo. App. E.D. 2024). We consider only whether, under the totality of the circumstances, there was a sufficient factual basis for the circuit court's determination. *Id.*

> Although our decisions often state that a trial court has broader discretion to grant a motion to set aside a default judgment than to deny it because of the distaste our system holds for default judgments, ultimately, the decision is left to the sound discretion of the trial court and should be overturned only if that discretion is abused.

*McCroskey v. Singh*, 683 S.W.3d 690, 697 (Mo. App. S.D. 2023) (citation omitted). If reasonable persons can differ as to the propriety of the circuit court's action, then we cannot say that the circuit court abused its discretion. *Coble v. NCI Bldg. Sys.*, 378 S.W.3d 443, 451 (Mo. App. W.D. 2012). Further, while the law favors a trial on the merits, "such a generalization must be carefully applied to the facts of each case in the interest of justice; for, the law defends with equal vigor the integrity of the legal process

7

and procedural rules and, thus, does not sanction the disregard thereof." *Solomon*, 640 S.W.3d at 477 (citation omitted).

## Analysis

Root brings two points on appeal. In its first point, Root argues that the circuit court abused its discretion by failing to set aside the default judgment because it showed good cause. In its second point, Root argues that the circuit court abused its discretion in failing to set aside the default judgment because Root demonstrated that it had a meritorious defense. Because we find that Root's first point is dispositive, we do not address its second point.

Rule 74.05(d) provides the circuit court may set aside a default judgment "[u]pon motion stating facts constituting a meritorious defense and for good cause shown," as long as the motion to set aside is filed "within a reasonable time not to exceed one year after the entry of the default judgment."[5] Further, "a motion to set aside a default judgment does not prove itself and *must* be verified or supported by affidavits or sworn testimony produced at the hearing on the motion." *Solomon*, 640 S.W.3d at 477 (citation omitted). Root, as the party seeking to set aside the default judgment, bore the burden to show both a meritorious defense and good cause. *See Vogel*, 620 S.W.3d at 111. The failure to establish either requires that the motion to set aside the default judgment be denied. *Id.*

---

[5] Since Wetzel does not assert that the motion to set aside the default judgment was not filed "within a reasonable time, not to exceed one year," we need not consider this aspect of Rule 74.05(d).

8

**Point 1: Whether Good Cause Existed**

Root's first point on appeal contests the Rule 74.05(d) judgment denying its motion to set aside by arguing that the circuit court abused its discretion in finding that Root did not demonstrate good cause to set aside the default judgment. Root argues that it established good cause in that Root had designated a registered agent, there was no recklessness, its actions were not deliberately indifferent as it had no notice of the lawsuit, and there was no impediment to the judicial process. We disagree.

Rule 74.05(d) provides that "'[g]ood cause' includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." "Negligent conduct can constitute 'good cause,' whereas reckless conduct does not." *Coble*, 378 S.W.3d at 448. "A person acts negligently if his inadvertence, incompetence, unskillfulness or failure to take precautions precludes him from adequately coping with a possible or probable future emergency." *Id.* (citation and internal quotation marks omitted).

> Recklessness, on the other hand, requires that the actor make a conscious decision to pursue a particular course of action either with knowledge of the serious danger to others involved in it or with knowledge of the facts which would disclose the danger to a reasonable man. Intentional indifference, meaning that an individual does not care about the consequences of his or her actions, can constitute recklessness. Recklessness generally involves some element of deliberateness and of risk.

*Id*. (citations and internal quotation marks omitted). In close cases, we must defer to the circuit court's determination as to whether conduct is excusable or reckless. *Id.* at 447.

Root bore the evidentiary burden of proving that "good cause" existed and that it was entitled to have the default judgment set aside. *Id.* at 447-48. Root attempted to

9

satisfy this burden by submitting an affidavit from its deputy general counsel averring that it was unaware of the Wetzel lawsuit until after the default judgment because CT Corporation did not notify it of the lawsuit. Viewing this evidence in the light most favorable to the circuit court's ruling, we find the circuit court did not abuse its discretion in concluding that Root failed to show good cause for its default.

We acknowledge that there "are a number of cases in which a party has proven by sworn affidavit that the party's conduct was based on a mistake or conduct not intentionally or recklessly designed to impede the judicial process." *Brungard v. Risky's Inc.*, 240 S.W.3d 685, 688 (Mo. banc 2007). In *Brungard*, the circuit court set aside a default judgment based entirely on an affidavit from the defaulting company's owner/registered agent. *Id.* at 685-86. The owner attested that he "thought that he faxed the [summons] to his insurance agent for delivery to his insurance carrier," and that he "did not intentionally ignore th[e] matter." *Id.* at 686. The Supreme Court of Missouri affirmed the judgment, holding the owner's affidavit stating his belief that he provided notice by appropriately forwarding the suit papers to his insurance company was sufficient to demonstrate that he was neither reckless nor intentionally dilatory in failing to file a timely answer. *Id.* at 688. *See also Barsto Constr., Inc. v. Gladstone Senior Partners, L.P.,* 270 S.W.3d 440, 443 (Mo. App. W.D. 2008) (finding good cause where an affidavit from a vice president of defendant's general partner established that he believed an amendment to the company's certificate of limited partnership filed with the Texas Secretary of State that reflected a changed address of the company would also update the registered agent's records in Missouri, and evidence demonstrated that the

registered agent had noted address change in its Texas office, but not in Missouri); *Heintz Elec.Co. v. Tri Lakes Interiors, Inc.,* 185 S.W.3d 787, 790, 793-94 (Mo. App. S.D. 2006) (finding good cause where affidavit established that defendant's employee inadvertently threw away the suit papers under the mistaken belief that the papers were from another case); *Myers v. Pitney Bowes, Inc.,* 914 S.W.2d 835, 838-39 (Mo. App. S.D. 1996) (finding good cause after defendant offered affidavit verifying allegations in the motion to set aside that the summons was lost due to the confusion of an office reorganization and only located after the default judgment had already been entered); *Gibson by Woodall v. Elley,* 778 S.W.2d 851, 853–55 (Mo. App. W.D. 1989) (finding good cause where affidavits established a "series of mishaps" where the documents were sent to the legal department at a time when all attorneys were attending an out-of-town meeting and the office was staffed by temporary employees who incorrectly filed the documents).

We have a decidedly different set of circumstances in the case before us than those just discussed *supra*. Root told the circuit court that it informed the Department that if it received service of process for Root, it was to notify CT Corporation, and Root said it was under the belief that CT Corporation was its registered agent. Despite this, Root admitted at the hearing there was "no issue that service was properly had . . . through the Department of Insurance" and that Wetzel "ha[d] a valid judgment. There's no question."

Root ignores "the long-settled principle of law that 'notice to [an] agent is notice to the principal, [and] in fact there is no way to notify a corporation than to notify an agent.'" *Chick v. Moving Proz, LLC.,* No. WD86645, slip. op. at 6 (Mo. App. W.D. Aug.

11

6, 2024) (quoting *Hayward v. Nat'l Ins. Co.*, 52 Mo. 181, 191 (1873)). Root is, therefore, bound by the service on its registered agent, CT Corporation. *See Chick*, No. WD86645, slip. op. (holding that although a summons erroneously identified defendant by misspelling defendant's name, service on defendant's registered agent was reasonably calculated to notify defendant of the lawsuit and was sufficient to afford due process).

The evidence offered by Root at the hearing on its motion to set aside on the issue of good cause consisted only of Root's deputy general counsel's affidavit. This affidavit provided no information about the relationship between Root and CT Corporation or any details about a purported dispute between the two. Additionally, Root offered no evidence from CT Corporation about its role in the process, about what it did or did not do with the Wetzel summons and petition, or why it did not forward the summons to Root.

Root's attorney *argued* at the hearing that CT Corporation had previously provided notice of lawsuits in the past but, in this case, it failed to provide notice of the Wetzel petition. Root's attorney also informed the circuit court of a purported dispute with CT Corporation as to whether or not CT Corporation had an obligation to notify Root about the Wetzel lawsuit.[6] Root's attorney also told the circuit court that there was some "disagreement with CT [Corporation] as to whether or not they were actively the registered agent in that they needed to provide notice to my client that a lawsuit had been filed." However, none of those arguments were supported by live testimony or otherwise

---

[6] We note that Root did not challenge the default judgment on the fact that it was invalid for lack of proper service or that the wrong registered agent was served.

12

through an affidavit, and "[a]rgument of counsel regarding the good cause element is not competent evidence on which the court can base its decision to set aside a default judgment." *Behav. Sci. Inst., Inc., v. Transitional Ctr., Inc.*, 669 S.W.3d 378, 381 (Mo. App. E.D. 2023) (citation omitted).

Root argues that it is undisputed that CT Corporation did not provide it with notice of the Wetzel lawsuit until after the circuit court entered the default judgment. Root is incorrect in this assertion.

> Evidence is uncontested in a court-tried civil case when the issue before the trial court involves only stipulated facts and does not involve resolution by the trial court of contested testimony; in that circumstance, the only question before the appellate court is whether the trial court drew the proper legal conclusions from the facts stipulated.

*Turner v. Gateway Bobcat of Mo. Inc.*, 450 S.W.3d 444, 448 (Mo. App. W.D. 2014) (citation omitted). Here, the factual assertions made by Root's deputy general counsel in his affidavit were in fact disputed. At the hearing, Wetzel's attorney stated "I don't know what the facts [] between CT Corporation and Root are. There's no affidavit as to what this mistake was," but that he served the Department and it served "CT Corporation. I don't know what happened after that."

Additionally, in arguing that it was "undisputed" that CT Corporation did not provide it with notice, Root ignores that "in deciding whether good cause has been established, a trial court is free to 'disbelieve statements made by a moving party in its affidavits.'" *Coble*, 378 S.W.3d at 449 (quoting *Beckmann v. Miceli Homes, Inc.,* 45 S.W.3d 533, 542 (Mo. App. E.D. 2001)). *See also Vogel*, 620 S.W.3d at 113 (explaining that a circuit court "was free to disbelieve the assertions in [an] affidavit offered to

13

establish 'good cause' and plainly did so").  Here, the circuit court could disbelieve Root's deputy general counsel's assertions in his affidavit about its lack of knowledge of the lawsuit and that CT Corporation did not advise it of the service of the lawsuit.  Under our standard of review, we cannot conclude that the circuit court abused its discretion in refusing to set the default judgment aside based on the evidence offered at the hearing and the affidavit attached to Root's motion.  There were sufficient facts from which the circuit court could have found a lack of good cause on Root's part for its failure to respond to the petition.

Just as we did in *Coble*, we emphasize that, "[u]nder our standard of review, we do not determine whether we would have reached the same decision as the trial court."  378 S.W.3d at 451 (citation and internal quotation marks omitted).  If reasonable persons can differ as to the propriety of the circuit court's determination, then we cannot say that the circuit court abused its discretion.  *Id.*  We do not hold that, on this record, the circuit court was prohibited from setting aside the default judgment; we hold only that the circuit court did not abuse its discretion by failing to do so.  *Id.*

Point one is denied.[7]

---

[7]  Because Root's failure to show good cause is a sufficient basis to affirm the judgment, there is no need to address Root's separate claim in its second point relied on that it showed a meritorious defense.  *Steele v. Johnson Controls, Inc.*, 688 S.W.3d 192, 198 n.6 (Mo. banc 2024); *T Westfall Plaza WCR MO, LLC v. SJB Restaurant Grp., LLC*, 689 S.W.3d 216, 219 (Mo. App. E.D. 2024).

**Motion for Attorney's Fees on Appeal**

We now turn to Wetzel's motion for attorney's fees on appeal, which has been taken with the case. Wetzel's motion seeks attorney's fees pursuant to this Court's Special Rule 29 and sections 375.420 and 375.296. Under Special Rule 29, a party may file a motion for attorney's fees on appeal "pursuant to contract, statute or otherwise." *Williams v. City of Kansas City*, 641 S.W.3d 302, 334 n.12 (Mo. App. W.D. 2021).

Section 375.420 provides:

> In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

Section 375.296 provides:

> In any action, suit or other proceeding instituted against any insurance company, association or other insurer upon any contract of insurance issued or delivered in this state to a resident of this state, or to a corporation incorporated in or authorized to do business in this state, if the insurer has failed or refused for a period of thirty days after due demand therefor prior to the institution of the action, suit or proceeding, to make payment under and in accordance with the terms and provisions of the contract of insurance, and it shall appear from the evidence that the refusal was vexatious and without reasonable cause, the court or jury may, in addition to the amount due under the provisions of the contract of insurance and interest thereon, allow the plaintiff damages for vexatious refusal to pay and attorney's fees as provided in section 375.420. Failure of an insurer to appear and defend any action, suit or other proceeding shall be deemed prima facie evidence that its failure to make payment was vexatious without reasonable cause.

15

Wetzel was awarded damages plus $20,000 in attorney's fees in the default judgment. The Rule 74.05(d) judgment did not award any attorney's fees. Wetzel's motion for attorney's fees on appeal states that Wetzel has incurred additional attorney's fees responding to Root's appeal of the default judgment. Root, however, is not appealing the circuit court's default judgment but instead, the court's denial of its motion to set aside the default judgment, as it must.

"In awarding attorney's fees, we follow the 'American Rule,' which provides that 'orders requiring one party to pay another party's attorney's fees or other expenses ordinarily are not permitted unless the parties' contract or a statute authorizes the court to make such an award.'" *Vogel*, 620 S.W.3d at 116 (quoting *Darks v. Jackson Cnty.*, 601 S.W.3d 247, 261 (Mo. App. W.D. 2020)). "Rule 74.05(d) is clear that a motion to set aside a default judgment 'is an independent action and not an authorized after-trial motion.'" *Id.* Here, the Rule 74.05(d) judgment "is separate from the [j]udgment which included the default judgment entered against" Root. *Id.* Thus, attorney's fees on the appeal of motion to set aside a default judgment are not available under section 375.420 or 375.296 as both sections apply to actions against insurance companies and not independent actions to set aside default judgments under Rule 74.05. For this Court to award Wetzel attorney's fees incurred in connection with responding to Root's appeal from the Rule 74.05(d) judgment, there must be an exception to the American Rule that would authorize this award. *Id.* "Absent statutory authorization or a contractual agreement providing for attorney's fees, we must conclude that the American Rule applies so that [Wetzel] bears the expense of the attorney's fees he incurred in connection

16

with responding" to Root's appeal from the Rule 74.05(d) judgment.  *Id.* at 116-17.

Wetzel's motion for attorney's fees on appeal is denied.

**Conclusion**

The circuit court's Rule 74.05(d) judgment is affirmed.


_____
Janet Sutton, Judge

Lisa White Hardwick, P.J., and Cynthia L. Martin, J. concur.